IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANA AGUILAR, GUADALUPE CERVANTES, MARIA DELVALLE, MARINA GOMEZ, GLORIA GUEVARA, BERTILA DIAZ, and OTHERS,<br><br>Plaintiffs,<br><br>vs.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC.,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:07-CV-504-TC |

Six Hispanic plaintiffs[1] have brought this employment discrimination action against their former employer, Defendant Schiff Nutrition International, Inc. ("Schiff"), under Title VII and 42 U.S.C. § 1981. This matter comes before the court on Schiff's Motion to Dismiss certain Title VII claims for lack of subject matter jurisdiction and for failure to state a claim and Schiff's Motion to Sever Plaintiffs' claims into four separate cases.

Schiff targets the Title VII hostile work environment and retaliation claims of four plaintiffs: Guadalupe Cervantes, Maria Delvalle, Marina Gomez, and Gloria Guevara.[2] It also

---

[1]The Amended Complaint also lists "Others" as plaintiffs, suggesting that they bring claims on behalf of a broader class. Because no class has been certified, the court limits its analysis to the individual Plaintiffs' situations.

[2]The Motion to Dismiss does not address Plaintiff Bertila Diaz's claims, Plaintiff Ana Aguilar's Title VII retaliation claim, or the Title VII wrongful termination claims of Plaintiffs Guevara, Gomez, and Devalle. The motion does not address any hostile work environment or

challenges Plaintiff Ana Aguilar's Title VII hostile work environment claim.  Schiff contends

that the claims must be dismissed because the claimants did not exhaust their administrative

remedies (i.e., they either failed to file any claim with the EEOC or corresponding state agency,

or their claims were untimely).

For the reasons set forth below, Schiff's Motion to Dismiss is GRANTED IN PART

AND DENIED IN PART.  Schiff's Motion to Sever is DENIED.

## I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[3]

Schiff Nutrition International, Inc.[4] is a Utah company that manufactures and sells

vitamins and minerals, nutrition bars, and various health supplements.  All six Plaintiffs were

employed in Schiff's Salt Lake City, Utah production and packaging plant working on the

production and packaging lines.  The Plaintiffs are Hispanic, and their native language is

Spanish.

In 2003, Schiff instituted an "English Only Policy," prohibiting workers from speaking

Spanish while on the job.  Schiff also required employees to pass an English proficiency test in

order to remain employed.  In 2004, three of the Plaintiffs—Maria Delvalle, Marina Gomez, and

Gloria Guevara—did not pass the exam and were fired as a result.  The other three

retaliation claims brought under 42 U.S.C. § 1981.  And it does not address the claims for
wrongful termination under Title VII (in which three Plaintiffs allege they were wrongfully
terminated for failing an English proficiency test).  Finally, it does not address the state law
claims for intentional infliction of emotional distress.

[3]The facts in this summary section are taken from the Plaintiffs' Amended Complaint.
Additional facts are discussed as needed throughout the Order.

[4]Schiff is formerly known as Weider Nutrition Group, Inc.

Plaintiffs—Guadalupe Cervantes, Ana Aguilar, and Bertila Diaz—took the exam and passed it.

But they lost their jobs (Ms. Cervantes and Ms. Aguilar in 2004, and Ms. Diaz in 2006) allegedly

because of their race or national origin and because they complained about discrimination against

Hispanic workers, including allegedly discriminatory behavior on the part of Schiff's new

manager, Paul Nicolette.  The alleged harassing behavior of Mr. Nicolette and other managers

(including racial slurs and disparate treatment of Hispanic workers) affected the Plaintiffs as well

as other Hispanic workers at the plant.

After charges of discrimination were filed with the Utah Antidiscrimination and Labor

Division (UALD) (the state version of the federal Equal Employment Opportunity Commission

(EEOC)), the agency attempted to resolve the dispute.  But that proved unsuccessful.

Accordingly, the Plaintiffs filed this action against their former employer.  No discovery

has occurred yet.

## II.  ANALYSIS

Schiff filed a motion seeking dismissal of certain Title VII claims under Federal Rules of

Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a

claim).  Schiff also filed a motion to sever the Plaintiffs' claims.  Each motion will be addressed

in turn.

### A.    SCHIFF'S MOTION TO DISMISS

#### 1.    Standard of Review

Schiff brings part of its motion to dismiss under Rule 12(b)(1), which allows for

dismissal based on lack of subject matter jurisdiction for failure to exhaust administrative

remedies.  The remainder of Schiff's motion is filed under Rule 12(b)(6) for failure to file timely

charges of discrimination.

        a.     <u>Standard of Review for 12(b)(1) Motions</u>

Generally speaking, a court lacks subject matter jurisdiction over a plaintiff's Title VII discrimination claims if that plaintiff never filed a charge of discrimination with the appropriate federal or state agency.  <u>Jones v. UPS</u>, 502 F.3d 1176, 1183 (10th Cir. 2007) ("The first step to exhaustion is the filing of a charge of discrimination with the EEOC [or appropriate state agency].");  <u>Jones v. Runyon</u>, 91 F.3d 1398, 1399 (10th Cir. 1996) ("Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII.").  <u>Cf.</u> <u>Zipes v. TWA, Inc.</u>, 455 U.S. 385, 393 (1982) (holding that an untimely charge of discrimination does not implicate jurisdictional concerns).

Only Plaintiff Guadalupe Cervantes' Title VII claims raise a jurisdictional question, because, as alleged in Paragraph 8 of the Amended Complaint, Ms. Cervantes is the only Plaintiff who did not file any charge of discrimination with the UALD or EEOC.[5]  In the Amended Complaint, Ms. Cervantes alleges jurisdiction by citing to the "single filing rule" exception to the filing requirement, which allows her to opt into a suit by "piggybacking" on a similarly-situated plaintiff's timely-filed charge of discrimination if certain conditions are met. <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095, 1110 (10th Cir. 2001).

Schiff does not dispute the allegation that Ms. Cervantes did not file any charge of discrimination, but it does contend that Ms. Cervantes does not satisfy the requirements of the

_____

    [5]As explained below, the court finds that there is no genuine dispute that Ms. Cervantes did not file a charge of discrimination.  For similar reasons (also discussed below), the court disagrees with the Plaintiffs' contention that the court must allow limited discovery before ruling on the motion to dismiss for lack of subject matter jurisdiction.

single filing rule.  Because Schiff challenges the facts alleged to create jurisdiction over Ms. Cervantes' claims, the court may rely on materials outside the pleadings to determine whether the court lacks subject matter jurisdiction.[6]  See, e.g., Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002) ("When . . . a party's Rule 12(b)(1) motion challenges the facts upon which subject matter jurisdiction depends, 'a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'").

Ms. Cervantes bears the burden of establishing jurisdiction.  Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 914 (10th Cir. 1993); Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).  To successfully challenge the 12(b)(1) motion, Ms. Cervantes "must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence."  Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003).

       b.     Standard of Review for 12(b)(6) Motions

For the remainder of the challenged claims, which Schiff contends are barred as untimely, the standard of review under Rule 12(b)(6) applies, because "filing a timely charge of

---

[6]By considering materials outside the pleadings, the court is not converting the 12(b)(1) motion to dismiss into a motion for summary judgment.  See, e.g., Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324-25 (10th Cir. 2002) ("Reliance on evidence outside the pleadings in addressing [a 12(b)(1) motion to dismiss] does not, as a general rule, convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  We have recognized an exception to this general rule, where 'the jurisdictional question is intertwined with the merits of the case.' . . . . [But exhaustion of administrative remedies under Title VII is not intertwined with a] substantive claim of discrimination.") (internal citations omitted).

discrimination with the EEOC is <u>not a jurisdictional prerequisite</u> to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." <u>Zipes v. TWA, Inc.</u>, 455 U.S. 385, 393 (1982) (emphasis added).  <u>See also</u> <u>Runyon</u>, 91 F.3d at 1399 n.1 (quoting <u>Zipes</u> for same proposition).

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations.  <u>Tal v. Hogan</u>, 453 F.3d 1244, 1252 (2006), <u>cert. denied</u>, 127 S. Ct. 1334 (2007); <u>Mitchell v. King</u>, 537 F.2d 385, 386 (10th Cir. 1976).  The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007).  But all reasonable inferences must be drawn in the nonmoving party's favor.  <u>Tal</u>, 453 F.3d at 1252.

Moreover, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss [under Rule 12(b)(6)], at least where the document's authenticity is not in dispute," without converting the motion to one for summary judgment.  <u>Utah Gospel Mission v. Salt Lake City Corp.</u>, 425 F.3d 1249, 1253-54 (10th Cir. 2005), <u>quoted in</u> <u>Pace v. Swerdlow</u>, 519 F.3d 1067, 1072 (10th Cir. 2008).  <u>See also</u> <u>Holowecki v. Fed. Express Corp.</u>, 440 F.3d 558, 565-66 (2d Cir. 2006) (applying same rule to consider plaintiff's filings with EEOC in deciding motion to dismiss ADEA claims as untimely), <u>aff'd</u>, 128 S. Ct. 1147 (2008).

The court will consider copies of the charges of discrimination of Ms. Guevara, Ms. Gomez, Ms. Delvalle, and Ms. Aguilar, which Schiff submitted as exhibits to its Motion to Dismiss.  Those documents, which are central to the Plaintiffs' claims that their charges were

6

timely, are referred to in the Amended Complaint and their authenticity is not questioned.  (See

Exs. B, C, D, F, G, H, I, K, & L, attached to Def.'s Mem. Supp. Mot. Dismiss.)

### 2.      Timeliness of Claims and the "Relation Back" Exception

Title VII requires a claimant to file a written charge of discrimination with the EEOC

within 180 days, or, in this case, with the UALD within 300 days, of the last alleged

discriminatory act.[7]  Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999) (citing 42

U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13 (1998)).  The "relation back" doctrine is one

exception to this rule.

The "relation back" exception allows amendments filed more than 300 days from the date

of the last act of alleged discrimination to relate back to the original charge's filing date if certain

conditions are met.

> A [timely] charge may be amended to cure technical defects or omissions,
> including failure to verify the charge, or to clarify and amplify allegations made
> therein.  Such amendments and amendments alleging additional acts which
> constitute unlawful employment practices related to or growing out of the subject
> matter of the original charge will relate back to the date the charge was first
> received.  A charge that has been so amended shall not be required to be
> redeferred.

29 C.F.R. § 1601.12(b) (2008) (emphasis added).

Schiff contends that certain Title VII claims filed by Ms. Aguilar, Ms. Guevara, Ms.

Gomez, and Ms. Delvalle do not satisfy the timeliness requirement.  Because the challenged

claims, all of which Plaintiffs contend were amendments to their original charges of

discrimination, were filed with the UALD outside the 300-day period, the four women rely on the

---

[7]Some exceptions (such as equitable tolling, waiver, and estoppel) may apply to the
timeliness requirement, but they are not at issue here.

"relation back" exception to avoid dismissal of their claims.

        a.     <u>Ana Aguilar</u>

Schiff seeks dismissal of Ms. Aguilar's Title VII claim for hostile work environment, which was filed outside the 300-day time limit imposed by Title VII. Ms. Aguilar contends that her claim is timely because it relates back to her original and first amended charges, which were timely filed, respectively, in July 2004 and December 2004.

        *i.*     *Ms. Aguilar's Charges of Discrimination*

On May 25, 2004, Ms. Aguilar was fired from her job with Schiff. In July 2004, she filed a Charge of Discrimination with the UALD [hereinafter "Original Aguilar Charge"]. (See Ex. I attached to Def.'s Mem. Supp. Mot. Dismiss.) In the one-page charge, she checked the box "National Origin" as the "cause of discrimination" and alleged the following "Particulars":

> I have been employed by this company for 6 years and have been able to successfully perform my job throughout my employment. My primary language is Spanish. English language classes that at one point were voluntary, have been made mandatory. On 6-4-04 I was terminated for failing to pass an English test. The English test is given in an arbitrary manner with no consistency in the manner or the questions that are given to each person. I believe that this English language test is discriminatory and not job or business related.
>
> I attribute [Schiff's] conduct to discriminatory employment practices based upon my national origin, Hispanic, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Utah Antidiscrimination Act of 1965, as amended.

(Original Aguilar Charge.) The statement that she was terminated for failing to pass the English test was incorrect. (See Am. Compl. ¶ 50 ("Ms. Aguilar ultimately passed the two English proficiency tests").)

Accordingly, she filed an amended Charge of Discrimination in December 2004 [hereinafter "Aguilar's First Amended Charge"]. (See Ex. H attached to Def.'s Mem. Supp. Mot.

Dismiss.)  Her First Amended Charge was timely.  In that charge, she checked the boxes labeled

"National Origin" and "Retaliation" and alleged the following "Particulars":

> I have been employed by this company for six years and have been able to
> successfully perform my job throughout my employment.  My primary language is
> Spanish.  English language classes that at one point were voluntary, have been
> made mandatory.  The English test is given in an arbitrary manner with no
> consistency in the manner, or the questions that are given to each person.  I
> believe that this English language test is discriminatory and not job or business
> related.  Hispanic workers are treated differently than non-Hispanic workers.  I
> was accused of abandoning my job when I did not do so.  Non-Hispanic workers
> who take leave have been treated differently than I was.  I was denied tuition
> benefits which were made available to non-Hispanic individuals.  After I
> complained about the discriminatory treatment, I was terminated on or about May
> 25, 2004.
>
> I believe I have been discriminated against based upon my National
> Origin/Hispanic, and Retaliation for complaining of discriminatory treatment in
> violation of Title VII of the Civil Rights Act of 1964, as amended, and the Utah
> Antidiscrimination Act of 1965, as amended.

(Ex. H attached to Def.'s Mem. Supp. Mot. Dismiss (emphasis added to highlight newly added

language)).)

More than two years later, in April 2007, Ms. Aguilar filed a second amended charge

[hereinafter "Aguilar's Second Amended Charge"], but by then the time for filing had passed.  In

her Second Amended Charge, she added the following language to her First Amended Charge:

> Proposed Class Action.  Schiff (fka Weider) has also engaged in a pattern or
> practice of discrimination against its other Hispanic employees working in jobs
> similar to mine.  Its policies have had a disparate impact on these employees.  The
> discrimination and disparate treatment I suffered is merely a typical example of
> Schiff's (fka Weider) discriminatory practices.

(Ex. K attached to Def.'s Mem. Supp. Mot. Dismiss.)

9

ii.      *Does Ms. Aguilar's Hostile Work Environment Claim Relate Back?*

In its analysis, the court must liberally construe the language in the Title VII charges filed with the EEOC.  Jones v. UPS, 502 F.3d at 1186.  "[A] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  Id. (internal citations and quotation marks omitted).  According to EEOC regulations, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b) (emphasis added).

Here, the analysis has two parts.  The first question is whether Ms. Aguilar has adequately stated a hostile work environment claim in her charges.  The second question is whether her Second Amended Charge relates back.

A hostile work environment claim "is composed of a series of separate acts that collectively constitute one unlawful employment practice, . . . [and those acts] occur over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  Tademy v. Union Pac. Corp., 520 F.3d 1149, 1156 (10th Cir. 2008) (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 117 (2002)) (internal citations omitted).   A hostile environment exists if "employment practices . . . permeate the workplace with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

Even though none of Ms. Aguilar's charges uses the term "hostile work environment,"

10

she still alleges unlawful employment practices that, in combination, suggest a hostile work environment.  For example, the "English Only" policy, the mandatory English classes, and the English proficiency test suggest hostility toward non-English speakers such as Ms. Aguilar, whose native language is Spanish.  This is so particularly if, as alleged, the policies were arbitrarily implemented and had no logical relation to the job requirements or employer's business.  She also alleges disparate treatment of her Hispanic co-workers based on their race or national origin.  Such information can also constitute evidence of a hostile work environment. See Hirase-Doi v. U.S. West Comm., Inc., 61 F.3d 777, 782 (10th Cir. 1995); Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir. 1987) ("one of the critical inquiries in a hostile environment claim must be the *environment*.") (emphasis in original).

Although Ms. Aguilar's Second Amended Charge uses the term "pattern or practice" rather than "hostile work environment," the actions it describes are consistent with a hostile work environment (i.e., employment practices permeating the workplace).  A "pattern or practice" claim is one alleging that illegal discrimination "was the company's standard operating procedure – the regular rather than the unusual practice."  Bazemore v. Friday, 478 U.S. 385, 398 (1986). See also Croy v. Cobe Labs., Inc., 345 F.3d 1199, 1202-03 (10th Cir. 2003) (reading a discrimination charge that alleged a series of failures to promote as a hostile work environment claim, stating that, "while [the claimant] has not specifically alleged a hostile work environment, she has alleged the existence of a 'glass ceiling' on the advancement of female employees.  This 'glass ceiling' claim is more akin to a hostile environment claim than a discrete claim."); Na'im v. Rice, ___ F. Supp. 2d ___, Civil Action No. 06-2237 (RMU), 2008 WL 4294495 (D.D.C. Sept. 22, 2008) (inferring hostile work environment claim arising out of allegations of a series of

discrete adverse actions in workplace).

Given the requirement that courts liberally construe language in charges filed with the EEOC, the court finds that Ms. Aguilar filed charges sufficiently alleging a hostile work environment.

Furthermore, her April 2007 Second Amended Charge relates back to the First Amended Charge because the allegations relate to the subject matter of the original charge.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002) ("Given . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.  In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.") (emphasis added);  Bronakowski v. Boulder Valley Sch. Dist., 549 F. Supp. 2d 1269, 1278 (D. Colo. 2008) (noting that each discrete act of discrimination is treated separately for determining whether it was timely filed, but that "'sole exception to this rule is a hostile environment claim; so long as one act that is part of the hostile environment is timely, the entirety of the hostile environment claim is timely.'") (citing Nat'l R.R. Passenger Corp.).

For the foregoing reasons, Schiff is not entitled to dismissal of Ms. Aguilar's Title VII hostile work environment claim.

> b.    Gloria Guevara, Marina Gomez, and Maria Delvalle

Schiff groups these three Plaintiffs together and calls them the "English Test Plaintiffs." Because their charges of discrimination were essentially identical, the court analyzes their claims together.

Ms. Guevara, Ms. Gomez, and Ms. Delvalle were fired in June 2004 after they failed the

12

English proficiency test administered by Schiff.  All three of them filed timely charges with the

UALD in July 2004, asserting a charge of wrongful termination on the basis of national origin.

Each alleged the following "Particulars":

> I have been employed by this company for [x] years and have been able to
> successfully perform my job throughout my employment.  My primary language is
> Spanish.  English language classes that at one point were voluntary, have been
> made mandatory.  On 6-3-04, I was terminated for failing to pass an English test.
> The English test is given in an arbitrary manner with no consistency in the manner
> or the questions that are given to each person.  I believe that this English language
> test is discriminatory and not job or business related.

> I attribute Respondent's conduct to discriminatory employment practices based
> upon my National Origin/Hispanic in violation of Title VII of the Civil Rights Act
> of 1964, as amended, and the Utah Antidiscrimination Act of 1965, as amended.

(Exs. B, C, & D attached to Def.'s Mem. Supp. Mot. Dismiss.)

In September 2006, the EEOC issued three separate determinations of reasonable cause to

believe the English test was discriminatory.  But in April 2007, the English Test Plaintiffs

amended their charges, adding the following allegation:

> Proposed Class Action.  Schiff (fka Weider) has also engaged in a pattern or
> practice of discrimination against its other Hispanic employees working in jobs
> similar to mine.  Its policies result in both disparate treatment and a disparate
> impact on these employees.  The discrimination and disparate treatment I suffered
> is merely a typical example of Schiff's (fka Weider) discriminatory practices.

(Ex. F attached to Def.'s Mem. Supp. Mot. Dismiss.)  And when they amended their charges

once again in June 2007, they added allegations of retaliation:

> When I and others complained about the discriminatory treatment we were
> subjected to, Weider terminated our employment.

(Ex. G attached to Def.'s Mem. Supp. Mot. Dismiss.)

The question here is whether the English Test Plaintiffs' hostile work environment and

retaliation claims relate back to their original timely charge.  To avoid dismissal, their claims must be related to or growing out of the subject matter of their original charge (in which they alleged wrongfully terminated based on their national origin when they were fired for failing to pass the English proficiency test).

i.      <em>Retaliation Claims</em>

The Tenth Circuit decision in <u>Simms v. Oklahoma</u>, 165 F.3d 1321 (10th Cir. 1999), requires that the court dismiss the English Test Plaintiffs' retaliation claims.  According to Tenth Circuit law, "an amendment will not relate back when it advances a new theory of recovery, regardless of the facts included in the original complaint." <u>Id.</u> at 1327.  In <u>Simms</u>, the court held that a retaliation claim based on events occurring before the filing of the original discrimination claim constituted a new theory of recovery and so it did not relate back as a matter of law (i.e., it was not related to or growing out of the subject matter of the original charge). <u>Id.</u>  <u>See also</u> <u>Lombardo v. Potter</u>, 368 F. Supp. 1178, 1192 (D. Kan. 2005) (dismissing retaliation claim for failure to exhaust administrative remedies because it did not relate back to original charge, and citing <u>Simms</u> in support of holding).

According to the English Test Plaintiffs' charges, they were terminated before they filed their original charges, and so their subsequent charges of retaliation (which discuss events occurring before their termination date), advance a new theory of recovery.  Under <u>Simms</u>, such a charge does not relate back.  Consequently, Ms. Guevara, Ms. Gomez, and Ms. Delvalle did not exhaust their administrative remedies for their Title VII retaliation claims.

14

*ii.* *Hostile Work Environment Claims*

The English Test Plaintiffs' July 2004 Charges of Discrimination contain many of the same allegations set forth in Ms. Aguilar's First Amended Charge. And their April 2007 amendments are exactly the same as Ms. Aguilar's Second Amended Charge. The court finds that the English Test Plaintiffs' hostile work environment claims relate back to their timely-filed charge for the same reasons Ms. Aguilar's hostile work environment claim is allowed. Accordingly, Schiff is not entitled to dismissal of the English Test Plaintiffs' Title VII hostile work environment claims.

*iii.* *Applicability of Single Filing Rule to the English Test Plaintiffs*

Plaintiffs ask the court to apply the single filing rule to any claim that does not relate back, even if the plaintiff filed a charge with the EEOC or UALD. (See Pls.' Mem. Opp'n to Mot. Dismiss at 10.) This issue appears to be one of first impression in Tenth Circuit reported cases.

But the Second Circuit, Fifth Circuit, Eighth Circuit, and Eleventh Circuit (and the Tenth Circuit in an unreported case) have held that the single filing rule is not available to a plaintiff who has actually filed a claim with the EEOC. See Holowecki v. Fed. Express Corp., 440 F.3d 558, 564-65 (2d Cir. 2006) ("An individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge"), aff'd, 128 S. Ct. 1147 (2008); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1223-24 (5th Cir. 1995) (same) (unrelated portion of opinion abrogated on other grounds); Anderson v. Unisys Corp., 47 F.3d 302, 308 (8th Cir. 1995) (same); Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 557-58 (11th Cir. 1997). See also O'Neal v. Thompson, No. 01-2237, 54 Fed. Appx. 301, 303-04 (10th Cir. Dec. 23, 2002)

15

(unpublished) (citing <u>Gitlitz</u> and <u>Anderson</u> for same proposition).

Describing the policy behind such a rule, the Fifth Circuit stated, "Once the charge is filed, unless it is permissibly modified, the EEOC and the employer are entitled to rely on the allegations contained therein."  <u>Mooney</u>, 54 F.3d at 1223.  And the Second Circuit stated that, "[a]s noted by other Circuit Courts of Appeals, allowing an individual who has previously filed a charge to abandon that charge and piggyback onto the charges of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through informal conciliation."  <u>Holowecki</u>, 440 F.3d at 565 (citing <u>Gitlitz</u>, <u>Anderson</u>, and <u>Mooney</u>).

Given the above-cited case law, and for the policy reasons identified in those cases, the court holds that Ms. Gomez, Ms. Delvalle, and Ms. Guevara may not take advantage of the single filing rule to piggyback their untimely-filed charges of retaliation on any of the timely-filed charges.

### 3.     **Jurisdiction and Exhaustion of Remedies**

Schiff contends that Plaintiff Guadalupe Cervantes' Title VII claims for retaliation and hostile work environment must be dismissed for lack of subject matter jurisdiction because she did not file any charge of discrimination with the EEOC or UALD.  To avoid dismissal, Ms. Cervantes first contends that she did file a timely charge of discrimination.  Second, she contends that, even if she did not file a charge, the "single filing rule" exception to the exhaustion requirement allows her to "piggyback" her claims on Ms. Aguilar's charges of retaliation and hostile work environment.

      a.    <u>Did Ms. Cervantes File a Charge With the UALD?</u>

The threshold question is whether Ms. Cervantes actually filed a charge with the EEOC or UALD.  Ms. Cervantes, in the Amended Complaint, does not allege that she filed a claim with the EEOC or the UALD.  Instead, she invokes the single filing rule to establish jurisdiction for her claims.  (<u>See</u> Am. Compl. ¶ 8 (alleging court has jurisdiction because Ms. Cervantes satisfies the requirements of the single filing exception to the exhaustion requirement that a discrimination charge be filed with the appropriate administrative agency).)

But in Plaintiffs' opposition brief, Ms. Cervantes contends that she did file a charge with the UALD on November 23, 2004.  (<u>See</u> Pls. Mem. Opp'n Mot. Dismiss at 2.)  The documentary support for Ms. Cervantes' contention is Exhibit A to the opposition brief, which is an unauthenticated copy of a purported Charge of Discrimination signed by Ms. Cervantes, under penalty of perjury, on November 23, 2004, and filed with the UALD.  Schiff challenges the Plaintiffs' contention that the form was actually filed with the UALD.

Even if Ms. Cervantes signed the form, the record does not show whether the form was actually filed with the agency.  For example, unlike the other Plaintiffs' Charges in the record, Ms. Cervantes' Charge does not have a case number written on it, and it is not stamped as received by the agency.  <u>See</u> 29 C.F.R. § 1601.13(a)(4)(i)(A) (requiring state antidiscrimination agency to date and "time stamp" all documents of Title VII charges received).  Nothing in the record shows that the EEOC or UALD made any determination regarding the 2004 Charge.  Plaintiffs have not met their burden to show that Ms. Cervantes actually filed a charge of discrimination.

Moreover, the relevant information should be in the hands of the Plaintiffs.  That is why

the court disagrees with the Plaintiffs' contention that the court must allow limited discovery

before making a decision on the motion to dismiss for lack of subject matter jurisdiction.

Plaintiffs quote Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320 (10th Cir.

2002), in support of their discovery request.  (See Pls.' Mem. Opp'n Mot. Dismiss at 10-12.)

Sizova states that

> a refusal to grant discovery [when a 12(b)(1) motion raises factual issues]
> constitutes an abuse of discretion if the denial [of the discovery request] results in
> prejudice to a litigant.  Prejudice is present where "pertinent facts bearing on the
> question of jurisdiction are controverted . . . or where a more satisfactory showing
> of the facts is necessary."

Id. at 1326 (internal citations omitted).  Considering the definition of "prejudice" in Sizova, the

court finds that Ms. Cervantes is not prejudiced by the court's denial of her request for

jurisdictional discovery.  As just noted, discovery is not necessary because the required

information should be in the hands of the Plaintiffs, who have had sufficient time to investigate

the facts necessary to file their complaint and to supplement their opposition here.  See, e.g., Bell

Helicopter Textron, Inc. v. Heliquest Int'l, Ltd., 385 F.3d 1291, 1299 (10th Cir. 2004) (denial of

jurisdictional discovery is not abuse of discretion when there is low probability that discovery

would affect the outcome of decision on motion to dismiss for lack of personal jurisdiction).

Also, the facts relevant to the issue of whether Ms. Cervantes qualifies for the "single filing rule"

exception are not disputed.  That is, for purposes of the motion, the parties do not dispute the

content of the charges on which Ms. Cervantes is trying to piggyback (Ms. Aguilar's charge) and

do not dispute Ms. Cervantes' discrimination allegations in the Amended Complaint.  Finally,

Ms. Cervantes is not prejudiced because the court finds that she satisfies the requirements of the

single filing rule for the reasons set forth below.

18

b.     <u>Does Ms. Cervantes Qualify for the Single Filing Rule Exception to the Exhaustion of Remedies Requirement</u>?

There is a limited exception to the exhaustion requirement called the "single filing rule" (also known as "piggybacking").  <u>Foster v. Ruhrpumpen, Inc.</u>, 365 F.3d 1191, 1192 (10th Cir. 2004).

> Generally speaking, each plaintiff must exhaust his or her administrative remedies by filing a timely EEOC charge prior to bringing suit.  However, given the widespread concern over discriminatory employment practices and the congressional intent behind Title VII and ADEA, the federal courts have universally recognized an exception to the individual filing rule which provides that "in a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement."

<u>Id.</u> at 1197 (internal citations omitted).  <u>See also</u> <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095, 1110 (10th Cir. 2001) ("The policy behind the single filing rule is that it would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC.") (internal quotation marks, alteration, and citations omitted).

The Tenth Circuit in <u>Foster</u> noted that different variations on the test have been applied by the courts:

> The <u>broadest test</u> requires only that the claims of the administrative claimant and the subsequent plaintiff arise out of the same circumstances and occur within the same general time frame. . . .  A <u>somewhat narrower test</u> requires that the administrative claim give notice that the discrimination is "class-wide", i.e., that it alleges discrimination against a class of which the subsequent plaintiff is a member.  A <u>still narrower test</u> requires that the administrative charge not only allege discrimination against a class but also allege that the claimant purports to represent the class or others similarly situated.

<u>Id.</u> at 1197-98 (quoting <u>Howlett v. Holiday Inns, Inc.</u>, 49 F.3d 189, 195 (6th Cir. 1995)) (internal

19

citations omitted; emphasis added).  The <u>Foster</u> court noted that "it is not entirely clear . . . which test has been adopted by this circuit."  <u>Id.</u> at 1198.  Still, the <u>Foster</u> court narrowed the categories to the broadest test and the "somewhat narrower" test.  <u>Id.</u>  The "still narrower test" was not part of the <u>Foster</u> court's analysis.  Accordingly, the analysis here will apply the "somewhat narrower test" to determine whether the single filing rule should apply.

Under the single filing rule, plaintiffs who did not file claims with the EEOC will be allowed to bring their claims in federal court if (1) they are similarly situated to the plaintiffs who did file timely charges with the EEOC; (2) their claims arose out of the same circumstances and occurred within the same general time frame as the exhausted claims; and (3) the employer is on notice that other plaintiffs may file similar, if not identical, discrimination claims.  <u>Id.</u> at 1192, 1197.

Ms. Cervantes is similarly situated to Ms. Aguilar, her claims arose out of the same circumstances as Ms. Aguilar's claims, and the acts she complains about occurred within the same general time frame as the acts Ms. Aguilar complains about.  Like Ms. Aguilar, Ms. Cervantes is Hispanic, and Spanish is her native language.  She worked in the same plant at the same time as Ms. Aguilar.  (They were both employed by Schiff for more than six years.)  She was subjected to the same English-only policy, mandatory English classes, and English proficiency test.  She was treated less favorably than similarly-situated white co-workers.  She too complained of discrimination and, according to the Amended Complaint, was retaliated against when Schiff placed her in working conditions that set her up for failure on the job.  Ms. Cervantes was fired in August 2004, less than three months after Ms. Aguilar was fired.

At the time Ms. Cervantes' claims arose, Schiff was on notice that other Hispanic

20

plaintiffs might file similar charges, that the alleged discrimination was class-wide, and that Ms. Cervantes was a member of that class.  For example, Ms. Aguilar's timely charge stated that "Hispanic workers are treated differently than non-Hispanic workers." (Aguilar's First Amended Charge).  In addition, the English Test Plaintiffs filed discrimination claims at the same time that Ms. Aguilar filed her first charge.  They alleged that the English proficiency test itself was discriminatory and that Schiff engaged in discriminatory practices against workers of Hispanic origin.  (See also Sept. 1999 Written Complaint to Schiff Human Resources (attached as Ex. F to Decl. of Lauren I. Scholnick) (complaining of discriminatory practices against workers of Hispanic origin and signed by workers including some of the Plaintiffs).)

For the foregoing reasons, Ms. Cervantes has satisfied the requirements of the single filing rule.  She may "piggyback" her Title VII claims on Ms. Aguilar's Title VII claims of retaliation and hostile work environment.

**B.   SCHIFF'S MOTION TO SEVER**

According to the Federal Rules of Civil Procedure, "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  Schiff contends that the Plaintiffs do not satisfy the requirements of Rule 20(a)(1), and that the court should sever the claims under Rule 21, which provides that although misjoinder of parties is not a basis for dismissal, the court may "sever any claim against a party."  The decision to sever is within the court's discretion.  K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1153 (10th Cir. 1985).

In its motion, Schiff seeks an order creating four distinct cases.  One case would include the combined claims of Plaintiffs Guevara, Gomez, and Delvalle, each of whom alleges she was wrongfully terminated for failing the English proficiency test.  The other three cases would separate out the claims of each the three remaining Plaintiffs (Ana Aguilar, Bertila Diaz, and Guadalupe Cervantes), none of whom failed the English proficiency test and who, according to Schiff, were "discharged at different times over a three-year span and for wholly separate reasons."  (Def.'s Reply Supp. Mot. Sever at 2.)

Schiff's contention that "Plaintiffs' claims . . . are highly individualized and arise from substantially different facts, transactions, and occurrences" (Def.'s Combined Mem. Supp. Mot. Dismiss & Sever at 16) is unpersuasive.  Instead, the Plaintiffs' allegations satisfy the requirements of Rule 20.  That is, their claims arise out of the same series of transactions or occurrences and have questions of law and fact in common.  The alleged discrimination may, in some cases, have affected the Plaintiffs in different ways and manifested itself in different ways, but the source of the alleged discrimination is the same.  For example, according to the Amended Complaint, many of the problems started after Mr. Nicolette became the Plaintiffs' manager at the plant. (See Am. Compl. ¶ 18.)  All of the Plaintiffs are Hispanic, and their native language is Spanish.  They all worked at the same packaging plant as manual laborers working on the production and packaging lines.  (Id. ¶¶ 16-17.)  All of the Plaintiffs complained to their employer about the alleged discriminatory behavior.  (Id. ¶¶ 26, 29.)  All of the Plaintiffs were subjected to the English Proficiency Test.  (Id. ¶¶ 35-47.)  (The fact that some passed and others failed is not sufficient to justify severing their claims.)  In short, the Plaintiffs allege a pattern and practice of discrimination that ties all of the Plaintiffs together.

22

Schiff unconvincingly speculates that many problems will occur if the claims are tried together.  It contends that "an attempt to litigate the claims in one action would render otherwise straightforward, separate claims into an extraordinarily complex morass."  (Def.'s Combined Mem. Supp. at 17.)  It also surmises, without support, that "the scope of discovery for each Plaintiff and the time periods relevant to the discovery for each Plaintiff will be wildly different." (Id. at 18.)

Contrary to Schiff's assertions, severing the claims would be inconsistent with judicial economy (e.g., much discovery would be duplicative if the claims were separated).  And if, as Schiff asserts, the Plaintiffs are limited to a bench trial, confusion of the jury and "hopelessly complicated" evidentiary rulings (id.) would not be a relevant factor.  For these reasons, and for the reasons stated in the Plaintiffs' opposition to the motion to sever, Schiff's Motion to Sever is denied.

**ORDER**

For the reasons set forth above, the court ORDERS as follows:

1.      Defendant Schiff Nutrition International, Inc.'s Motion to Dismiss (Doc. No. 9) is GRANTED IN PART AND DENIED IN PART, as follows:

        a.      Schiff's Motion to Dismiss is GRANTED as to the Title VII retaliation claims of Maria Delvalle, Marina Gomez, and Gloria Guevara.

        b.      Schiff's Motion to Dismiss is DENIED as to the Title VII hostile work environment claims of Ana Aguilar, Maria Delvalle, Marina Gomez, and Gloria Guevara.

        c.      Schiff's Motion to Dismiss is DENIED as to the Title VII hostile work environment and retaliation claims of Guadalupe Cervantes.

23

2.      Defendant Schiff Nutrition International, Inc.'s Motion to Sever (Doc. No. 11) is

DENIED.

DATED this 29th day of September, 2008.

BY THE COURT:

TENA CAMPBELL
Chief Judge